```
 1              UNITED STATES DISTRICT COURT

 2           NORTHERN DISTRICT OF WEST VIRGINIA

 3    United States of America,

 4           Plaintiff,

 5                 VS.                CRIMINAL ACTION NO.

 6                                    3:23-cr-6

 7    Robert F. Crosson,

 8           Defendant.

 9                          - - -

10         Proceedings had in the plea hearing of the above-styled
      action on June 9, 2023, before Honorable Robert W. Trumble,
11    Magistrate Judge, at Martinsburg, West Virginia.

12                          - - -

13         APPEARANCES:

14         On behalf of the United States of America:

15         DeMarr Moulton
           Assistant United States Attorney
16         United States Attorney's Office
           700 Grant Street, Suite 4000
17         Pittsburgh, PA  14219
           412.894.7434
18

19         On behalf of the Defendant:

20         Kristen M. Leddy
           Assistant Federal Public Defender
21         Federal Public Defender's Office
           651 Foxcroft Avenue, Suite 202
22         Martinsburg, WV  25401
           304.260.9421
23

24         The defendant was present in person.

25         Proceedings recorded utilizing tape.
           Transcript produced by computer-aided transcription.
```

 1                        Friday Morning Session,

 2                        June 9, 2023, 11:19 a.m.

 3                        - - -

 4          THE CLERK:  This is the case of United States of

 5  America versus Robert F. Crosson, Criminal Number 3:23-CR-6,

 6  defendant one.  The defendant is present in person.

 7          Would the parties please note your appearance for the

 8  record.

 9          MR. MOULTON:  DeMarr Moulton, Special Assistant

10  United States Attorney in this district, for the government.

11          MS. LEDDY:  Kristen Leddy, Assistant Federal Public

12  Defender, for the defense.

13          THE COURT:  All right.  Good morning, everyone.

14  We're scheduled for a binding plea to an indictment this

15  morning.

16          Ms. Leddy, it's my understanding that Mr. Crosson

17  desires to plead guilty to the charge contained in Count 1 and

18  2 of the original indictment; is that correct?

19          MS. LEDDY:  That's correct, Your Honor.

20          THE COURT:  Thank you.

21          Mr. Crosson, would you please stand, raise your right

22  hand, and be sworn by the clerk.

23          (Defendant sworn.)

24          THE COURT:  Mr. Crosson, if you would pull that

25  microphone right up in front of you and speak directly into the

1  microphone when responding to my questions in a nice loud voice

2  so we have a clear record.  Can you do that for me?

3             THE DEFENDANT:  Yes, sir.

4             THE COURT:  All right.  Thank you.

5             Sir, do you understand that you are under oath, and

6  if you answer any of my questions falsely, your answers may

7  later be used against you in another prosecution for perjury or

8  for making a false statement?

9             THE DEFENDANT:  Correct.

10            THE COURT:  Sir, do you understand that if you lie,

11  it may result in a higher sentence for you?

12            THE DEFENDANT:  Correct.

13            THE COURT:  During the course of this hearing, I'm

14  going to be asking you several questions.  At any point you

15  should feel free to ask questions, ask for an explanation if

16  you do not understand my question, or ask me to pause the

17  proceedings so that you may confer with your attorney before

18  responding.  Do you understand, sir?

19            THE DEFENDANT:  Correct.

20            THE COURT:  Would you state your full name for the

21  record, please.

22            THE DEFENDANT:  Robert Crosson.

23            THE COURT:  Mr. Crosson, how old are you?

24            THE DEFENDANT:  60.

25            THE COURT:  And how much education have you had, sir?

1              THE DEFENDANT:  Associate's degree.

2              THE COURT:  So you can read, write, and understand

3      English?

4              THE DEFENDANT:  Correct.

5              THE COURT:  Have you recently been under the care of

6      a doctor, a psychiatrist, or other medical professional for any

7      serious physical or mental illness, including treatment for an

8      addiction to drugs or alcohol?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Does any of the treatment that you

11     received affect your ability to understand the indictment that

12     was filed against you?

13             THE DEFENDANT:  No.

14             THE COURT:  Does it affect your ability to read and

15     understand the plea agreement that was offered by the

16     government?

17             THE DEFENDANT:  It does not.  It does not.

18             THE COURT:  Does it affect your ability to

19     communicate with your attorney concerning the charges contained

20     in the indictment and any defenses thereto?

21             THE DEFENDANT:  No.

22             THE COURT:  Did it affect your ability to communicate

23     with your attorney concerning the terms and conditions as set

24     forth in the plea agreement offered by the government?

25             THE DEFENDANT:  No.

```
 1              THE COURT:  Are you currently using any form of a
 2   controlled substance or any medication or alcohol that might
 3   affect your ability to understand this proceeding today?
 4              THE DEFENDANT:  No.
 5              THE COURT:  Ms. Leddy, you've been dealing with
 6   Mr. Crosson.  Do you have any reason to question the
 7   competence?
 8              MS. LEDDY:  No, Your Honor.
 9              THE COURT:  Mr. Crosson, are you here today to enter
10   a guilty plea as part of a written plea agreement?
11              THE DEFENDANT:  Yes.
12              THE COURT:  Mr. Crosson, I find that you are
13   competent and capable of entering an informed plea.
14              Sir, my name is Robert Trumble.  I am a United States
15   Magistrate Judge.  You are charged with a felony offense.  You
16   have the right to have this plea taken by an Article III Judge,
17   sometimes called a District Judge.  Only you can give up that
18   right, and I can only hear your plea if you agree to it by
19   signing a waiver.
20              Now, I have on my bench a waiver that appears to bear
21   your signature.  First of all, sir, did you in fact sign this
22   waiver?
23              THE DEFENDANT:  Yes.
24              THE COURT:  Did you discuss it with Ms. Leddy before
25   you signed it?
```

1           THE DEFENDANT:  Yes.

2           THE COURT:  Do you understand the purpose for the

3    waiver is to allow me to hear your plea today; is that correct?

4           THE DEFENDANT:  Correct.

5           THE COURT:  Did anyone force or pressure you into

6    signing the waiver, sir?

7           THE DEFENDANT:  No.

8           THE COURT:  Ms. Leddy, is it your understanding that

9    your client agrees to the waiver?

10          MS. LEDDY:  Yes, Your Honor.

11          THE COURT:  I find that the waiver has been properly

12   executed and direct that it be filed.

13          Mr. Crosson, do you understand that you have the

14   right to be represented by counsel at every stage of these

15   proceedings, including your sentencing, and if you could not

16   afford counsel, you have a right to have counsel appointed on

17   your behalf?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Ms. Leddy, do you or any member of your

20   office represent anyone, including codefendants, who might be

21   interested in the outcome of this matter?

22          MS. LEDDY:  No, Your Honor.

23          THE COURT:  Mr. Crosson, let me ask you about the

24   representation that you've received.  Do you believe that

25   you've had adequate time to discuss your case fully with

1    Ms. Leddy?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Has she been able to answer your

4    questions about how best to proceed in this case?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Is there anything your lawyer has not

7    done which you have asked her to do?

8              THE DEFENDANT:  No.

9              THE COURT:  Are you completely satisfied with the

10   legal advice that you have received from Ms. Leddy?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Ms. Leddy, during the time that you

13   represented Mr. Crosson, has he been cooperative with you?

14             MS. LEDDY:  Yes, Your Honor.

15             THE COURT:  Have you had adequate time to discover

16   the government's case?

17             MS. LEDDY:  We have, Your Honor.

18             THE COURT:  Have you had adequate time to consider

19   the possible defenses to the charge?

20             MS. LEDDY:  Yes, Your Honor.

21             THE COURT:  Do you know of any viable defense to the

22   charges contained in Counts 1 and 2 of the original indictment?

23             MS. LEDDY:  No, Your Honor.

24             THE COURT:  Have you had adequate time to consider

25   the possible sentences that may be imposed upon your client?

1          MS. LEDDY:  Yes, Your Honor.

2          THE COURT:  Have you discussed all of those issues

3    with your client, Mr. Crosson?

4          MS. LEDDY:  I have, yes.

5          THE COURT:  Thank you.

6          Mr. Moulton, Ms. Leddy, we have a plea agreement in

7    this case.

8          Mr. Moulton, would you summarize the contents of the

9    plea agreement for the Court.

10          MR. MOULTON:  Yes, Your Honor.  The plea letter is

11    dated April 13th, 2023, at the top left.  Our plea letters are

12    probably different than yours, so ours are broken into letter

13    A1 is the -- Mr. Crosson will enter a plea of guilty to Counts

14    1 and 2 of the indictment at Case Number 3:23-CR-6 which

15    charges him with 18 USC 115(a)(1)(B), 115(b)(4), that's Count

16    1, and then Count 2 charges him with 18, United States Code,

17    875(c).

18          And paragraph A2 states that within 40 days he will

19    have to deposit a special assessment of $200 in the form of

20    cash, check, or money order payable to the US District Court

21    clerk.

22          Paragraph A3 is the waiver of appeal rights, which

23    Robert Crosson agrees to waive his right to appeal his

24    conviction and sentence under 28 USC 1291 or 18 USC Section

25    3742 subject to following exceptions:  If the United States

appeals from this sentence, Robert F. Crosson may take a direct

appeal from the sentence, and if, one, the sentence exceeds the

applicable statutory limits set forth in the United States Code

or, two, the sentence unreasonably exceeds the guideline range

determined by the Court under the sentencing guidelines,

Mr. Crosson may take a direct appeal.  He further waives his

right to file a motion to vacate under 28 USC 2255.

And nothing in these waivers shall preclude the

defendant from raising ineffective assistance of counsel in the

appropriate forum and if otherwise permitted by law.  And the

defendant understands that the government retains its right to

oppose any such claim on procedural or substantive grounds.

A4 is in the event that the judgment of conviction

and sentence entered does not remain in full force and effect

for any reason, the government may reinstate any charges

dismissed or reduced pursuant to this plea agreement.  And he

agrees that he waives any claim of double jeopardy, statute of

limitations, speedy trial, or other similar objections.

Section B of the plea agreement is what the United

States Attorney for the Western District of Pennsylvania agrees

to.  The United States Attorney retains the right of allocution

at the time of sentencing.

B2 is that the United States recommends that three

levels -- sorry.  Recommends a two-level downward for 3E1.1.

And B3, the United States Attorney will take any position --

 1   the acting US Attorney right now will take any position he

 2   deems appropriate.

 3           Section C1 and C2 are the penalties for each count.

 4   You want me to go into detail?

 5           THE COURT:  How do you want to do your summary,

 6   Mr. Moulton?  You can summarize as you see fit.

 7           MR. MOULTON:  That's fine.  I'll pass.

 8           C3 is the stipulation of the agreed facts.  On

 9   February 20th, 2022, Robert F. Crosson called the office of

10   United States Senator Joe Manchin located in Martinsburg, West

11   Virginia, in the Northern District of West Virginia.  The call

12   was not answered, so Mr. Crosson left a voice mail message

13   stating, "Hey, you motherfucker, a bullet coming to your head

14   soon.  Mr. Coal industry, how you doing?  Build back better,

15   huh?  Filibuster, huh?  You're a fucking pig."

16           On May 2nd, 2022, special agents with the FBI

17   interviewed Mr. Crosson.  During the interview, Mr. Crosson

18   admitted to making the call and leaving the voice mail message.

19   He acknowledged that he made the call while he was located in

20   the state of New York, thus the threat was transmitted in

21   interstate commerce.  Mr. Crosson knowingly and willfully made

22   the call threatening Senator Manchin because he disagrees with

23   Senator Manchin and his political views and official actions;

24   thus, Mr. Crosson made threats with the intent to impede or

25   interfere with such while engaged in the performance of

1    official duties and with intent to retaliate against such on

2    account of the performance of official duties.  Senator Manchin

3    reasonably perceived the threat as a true threat.  After the

4    meeting with the FBI, Mr. Crosson made no further threats.

5              Section C4 is the Rule 11(c)(1)(C) agreement between

6    the parties where we've agreed that with his guilty plea,

7    Mr. Crosson should be sentenced to one year of probation, no

8    fine, and a special assessment of $200.  That's for each count,

9    and they should run concurrently.

10             The parties further agree that no enhancements or

11   departures or variances are applicable or appropriate.

12             C5 is the guideline calculation we've agreed to,

13   which results in an offense level of six.

14             C6 is the parties agree that Mr. Crosson has no

15   criminal history points, and therefore criminal history

16   category of I.  This agreement is not binding on the Court.

17             The last paragraph, the offense level is not binding

18   on the Court either, Your Honor.  I missed that part.

19             C7, this agreement does not preclude the government

20   from pursuing any civil or administrative remedies.

21             And C8 is that if the -- after this plea agreement is

22   signed and prior to sentencing, if the defendant commits any

23   additional offenses, breaches the terms of this agreement, then

24   the United States may be released from its obligations under

25   this agreement and the defendant's guilty plea, if entered,

 1   will stand.  In that event, the United States will be entitled

 2   to seek a sentence other than the agreed upon and reinstate any

 3   previously dismissed or reduced charges and pursue additional

 4   charges.  And, again, the defendant waives any claim of double

 5   jeopardy, statute of limitations, speedy trial.  And any

 6   alleged breach of this plea agreement shall be determined by

 7   agreement of the parties or the Court.  That's it, Your Honor.

 8          THE COURT:  Thank you, Mr. Moulton.

 9          Ms. Leddy, did Mr. Moulton provide a fair summary of

10   the entire agreement?

11          MS. LEDDY:  Yes, Your Honor.

12          THE COURT:  Mr. Crosson, do you understand what this

13   agreement does?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand what this agreement

16   requires of you?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you have any questions about your plea

19   agreement?

20          THE DEFENDANT:  I do not.

21          THE COURT:  I'd like you to take a look at the plea

22   agreement.

23          Mr. Moulton, do you have the original plea agreement

24   there?  Would you tender that to Ms. Leddy for me, please.

25          Mr. Moulton [sic], I'd like you to take a look at the

1  plea agreement that was just handed to your attorney and now

2  you're looking at it.  First of all, on the sixth and last page

3  there's a signature line that appears to bear your signature.

4  So, sir, is that your signature on the last page?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Now, normally in this district we have

7  the defendant sign each of the pages of the plea agreement and

8  their counsel sign them.  That didn't occur, but that's okay.

9  I just want you to confirm that you have read each of the pages

10 of the plea agreement.

11             THE DEFENDANT:  I have.

12             THE COURT:  And I want you to confirm that you have

13 read each of the paragraphs of the plea agreement.

14             THE DEFENDANT:  I have.

15             THE COURT:  And all six pages; is that correct?

16             THE DEFENDANT:  Correct.

17             THE COURT:  Now, were each of the paragraphs of the

18 plea agreement discussed with you prior to your reaching an

19 agreement with the government?

20             THE DEFENDANT:  Yes, they were.

21             THE COURT:  Now, do you understand that this is a

22 binding plea, meaning that you have agreed to -- as to each of

23 the Counts 1 and 2 to be sentenced to a term of probation for

24 one year, no fine, and a special assessment of $200?

25             THE DEFENDANT:  Correct.

 1            THE COURT:  Do you also understand that you've agreed

 2   that the sentence of probation imposed for Counts 1 and 2 shall

 3   run concurrently?

 4            THE DEFENDANT:  Correct.

 5            THE COURT:  Now, do you understand that because this

 6   is a binding plea agreement, the sentencing court may accept

 7   the plea agreement, reject it, or defer a decision until it has

 8   reviewed the presentence report that will be prepared in your

 9   case, and if the Court does not accept the plea, you will have

10   the right to withdraw your plea of guilty?

11            THE DEFENDANT:  Correct.

12            THE COURT:  Do you understand that under a concept

13   known as relevant conduct, the Court may take into account any

14   conduct, circumstances, and injuries relevant to the crime to

15   which you are pleading guilty?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Do you understand that under the terms of

18   the plea agreement, you and the government have stipulated and

19   agreed that the total relevant conduct of the defendant with

20   regard to the original indictment is the information as set

21   forth in paragraph C3.  And I'd like you to take a look at that

22   right now.  That's starting at the bottom of page 3, paragraph

23   C3, and do you see where it starts, "The parties hereby

24   stipulate and agree the following facts"?

25            THE DEFENDANT:  Yes.

1            THE COURT:  I'd like you to read that, and it

2    continues on to page 4 and it ends before paragraph --

3    subparagraph four.  Do you see that, sir?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Have you read that stipulation, sir?

6            THE DEFENDANT:  I have.

7            THE COURT:  And you've agreed to the accuracy of that

8    stipulation?

9            THE DEFENDANT:  I have.

10           THE COURT:  Do you understand that the Court is not

11   bound by this stipulation, and if the Court does not accept

12   this stipulation, you do not have the right to withdraw your

13   guilty plea?

14           THE DEFENDANT:  I do.

15           THE COURT:  Sir, does the written plea agreement

16   represent the complete agreement between you and the

17   government?

18           THE DEFENDANT:  It does.

19           THE COURT:  Is there anything that you and the

20   government have agreed to that is not contained in that written

21   document?

22           THE DEFENDANT:  No.

23           THE COURT:  Mr. Crosson, do you want me to accept the

24   plea agreement?

25           THE DEFENDANT:  Yes.

1          THE COURT:  I find that the defendant, Mr. Crosson,

2     understands and agrees with the terms contained in the plea

3     agreement.  I order the original plea agreement to be filed as

4     part of the record in this case.

5          Ms. Leddy, would you tender the original plea

6     agreement to the clerk of the court for me.  Thank you.

7          Mr. Crosson, have you received a copy of the original

8     indictment filed against you?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Have you had an opportunity to read the

11    original indictment?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Would you like me to read the original

14    indictment to you, or will you waive reading of the original

15    indictment in open court?

16         THE DEFENDANT:  One more time.

17         THE COURT:  Do you want me to read it to you, or will

18    you waive reading the indictment in open court?

19         THE DEFENDANT:  Waive reading.

20         THE COURT:  Thank you, sir.

21         You are pleading to Count 1 of the original

22    indictment which charges you with influencing a federal

23    official by threat in violation of Title 18, United States

24    Code, Section 115(a)(1)(B) and 115(b)(4).  You are also

25    pleading to Count 2 of the original indictment which charges

1  you with threat by interstate communication in violation of

2  Title 18, United States Code, Section 875(c).

3          Mr. Crosson, how do you plead to the charge contained

4  in Count 1 of the original indictment?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  Mr. Crosson, how do you plead to the

7  charge contained in Count 2 of the original indictment?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  Now, before I accept your plea, I want to

10  make sure that there is a factual basis for your plea, that you

11  understand the nature of the charge against you and the

12  consequences of pleading guilty to those charges, that you

13  understand the constitutional and other legal rights you will

14  give up by pleading guilty, and that you are pleading guilty

15  voluntarily.

16          THE DEFENDANT:  Yes.

17          THE COURT:  Sir, you are charged in Count 1 with

18  influencing a federal official by threat in violation of Title

19  18, United States Code, Section 115(a)(1)(B) and 115(b)(4).

20  Now, Title 18, United States Code, Section 115(a)(1)(B) states

21  in its pertinent part as follows:  Whoever threatens to

22  assault, kidnap, or murder a United States official, a United

23  States judge, a federal law enforcement officer, or an official

24  whose killing would be a crime under such section with the

25  intent to impede, intimidate, or interfere with such official,

1    judge, or law enforcement officer while engaged in the

2    performance of official duties or with the intent to retaliate

3    against such official judge or law enforcement officer on

4    account of the performance of official duties shall be punished

5    as provided for in Subsection (b).

6           Title 18, United States Code, Section 115(b)(4)

7    provides for penalties for violation of this section which

8    provides as follows:  A threat made in violation of this

9    section shall be punished by a fine under this title or

10   imprisonment for a term of not more than ten years or both,

11   except that imprisonment for a threatened assault shall not

12   exceed six years.

13          Mr. Crosson, do you understand the statutes under

14   which you've been charged as to Count 1?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Now, if the government had to go to trial

17   in this case, the government would have to prove the following

18   elements of Title 18, United States Code, Section 115(a)(1)(B)

19   against you beyond a reasonable doubt:  First, you threatened

20   to assault or murder a person; second, at the time of the

21   alleged threat, the threatened person was a United States

22   official; and third, you acted with the intent to impede,

23   intimidate, or interfere with such official while the official

24   was engaged in the performance of official duties or with the

25   intent to retaliate against such official on account of the

1  performance of official duties.

2         Mr. Crosson, do you understand the elements of the

3  statute under which you've been charged as to Count 1?

4         THE DEFENDANT:  Yes.

5         THE COURT:  Mr. Crosson, considering those

6  definitions, do you consider yourself to be guilty of violating

7  Title 18, United States Code, Section 115(a)(1)(B)?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Now, you are also charged in Count 2 with

10 threat by interstate communication in violation of Title 18,

11 United States Code, Section 875.  Title 18, United States Code,

12 Section 875(c) states in its pertinent part as follows:

13 Whoever transmits in interstate or foreign commerce any

14 communication containing any threat to kidnap any person, or

15 any threat to injure the person of another, shall be fined

16 under this title or imprisoned not more than five years or

17 both.

18         Sir, do you understand the statute under which you've

19 been charged in Count 2 of the indictment?

20         THE DEFENDANT:  Yes.

21         THE COURT:  If the government had to go to trial in

22 this case, the government would have to prove the following

23 elements of Title 18, United States Code, Section 875(c)

24 against you beyond a reasonable doubt:  First, you knowingly

25 transmitted a communication in interstate or foreign commerce;

1    second, you subjectively intended the communication as a

2    threat; and third, the content of the communication contained a

3    true threat to kidnap or injure the person of another.

4             Sir, do you understand the elements of the statute

5    under which you've been charged as to Count 2?

6             THE DEFENDANT:  Yes.

7             THE COURT:  Considering those definitions, sir, do

8    you consider yourself to be guilty of violating Title 18,

9    United States Code, Section 875(c)?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Thank you.

12            Mr. Moulton, would you present your witness or

13   proffer as to what the government would have been able to prove

14   in this case.

15            MR. MOULTON:  I'll proffer the same factual basis

16   that I read in the plea agreement.

17            THE COURT:  So you're proffering the relevant conduct

18   stipulation as contained in paragraph 3C?

19            MR. MOULTON:  Yes, Your Honor.

20            THE COURT:  Or C3, as the case may be.

21            All right.  Ms. Leddy, the government is proffering

22   as its factual basis the relevant conduct stipulation as

23   contained in paragraph C3 on page 3 and continuing to page 4 of

24   the plea agreement.  Do you have any objection to the

25   government's proffer and the use of the relevant conduct

```
 1   stipulation as such?

 2             MS. LEDDY:  No objection, Your Honor.

 3             THE COURT:  Mr. Crosson, do you have any objection to

 4   the government's proffer as stated in your plea agreement in

 5   paragraph C3 beginning on page 3 and continuing to page 4?

 6             THE DEFENDANT:  No.

 7             THE COURT:  By way of that proffer, Mr. Crosson, is

 8   the evidence the government attorney just presented

 9   substantially correct?

10             THE DEFENDANT:  Correct.

11             THE COURT:  Did the government's proffer accurately

12   involve [sic] your involvement in what occurred?

13             THE DEFENDANT:  Correct.

14             THE COURT:  Mr. Crosson, I need you to explain to me

15   what you did that makes you guilty of influencing a federal

16   official by threat in violation of Title 18, United States

17   Code, Section 115(a)(1)(B).

18             THE DEFENDANT:  I threatened Joe Manchin with a

19   bullet.

20             THE COURT:  All right.  And at the time of your

21   threat, you knew that Mr. Manchin was a United States senator?

22             THE DEFENDANT:  I did.

23             THE COURT:  And what was the purpose for threatening

24   him?

25             THE DEFENDANT:  I was very angry with him.
```

 1          THE COURT:  On account of his acting in an official

 2  capacity in performing his official duties?

 3          THE DEFENDANT:  Yes.

 4          THE COURT:  And this act occurred on or about

 5  February 9, 2022, at or near Berkeley, in the Northern --

 6  County, in the Northern District of West Virginia?

 7          THE DEFENDANT:  Correct.

 8          THE COURT:  All right, sir.  Would you explain to me

 9  what you did that makes you guilty of threat by interstate

10  communication in violation of Title 18, United States Code,

11  Section 875(c).

12          THE DEFENDANT:  I called and left a voice mail.

13          THE COURT:  So you used a telephone communication to

14  make that threat; is that correct, sir?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And it was your intent to make a threat

17  by that communication; is that correct?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And as you indicated, that threat

20  contained a threat to -- "a bullet coming to your head soon."

21          THE DEFENDANT:  Correct.

22          THE COURT:  All right.  And as to this act, again,

23  that occurred on or about February 9, 2022, at or near Berkeley

24  County, in the Northern District of West Virginia?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Ms. Leddy, again, are you satisfied that

2  if this case went to trial, there would be no meritorious legal

3  defense to the charges?

4          MS. LEDDY:  Yes, Your Honor.  I would just like to

5  make one notation.  The plea agreement refers to the date of

6  February 20th, 2022, in the relevant conduct stipulation

7  paragraph.  The indictment has the February 9th date, 2022.

8          THE COURT:  Well, which one is correct?  I would hope

9  that the February 9th date is the correct date.

10         MR. MOULTON:  That's what I believe, Your Honor.  I

11  can -- if I can pull my --

12         THE COURT:  Let's figure that out, because one of the

13  two of them is going to have to be changed, and I can't change

14  the indictment.  I can potentially have you modify the plea

15  agreement and the relevant conduct to provide the proper date.

16         MR. MOULTON:  Could I have -- call someone real

17  quick?

18         THE COURT:  Sure.  Let's take a brief recess until we

19  figure that out.

20         Thank you for bringing that to our attention,

21  Ms. Leddy.

22         (Recess taken, 11:43 to 11:48 a.m.)

23         THE COURT:  We took a brief recess because Ms. Leddy

24  pointed out to the Court that there was an inconsistency as to

25  the date that the call and the threats were made as alleged in

1   the indictment with the relevant conduct stipulation as set

2   forth in the plea agreement.

3            Have we confirmed which date is accurate, either

4   February the 9th or February the 20th?

5            MR. MOULTON:  Your Honor, we're changing the date in

6   the factual basis of the plea agreement to on or about

7   February 9th, 2022.

8            THE COURT:  All right.  And so have we been -- have

9   we taken a look at the original plea agreement that was

10  originally handed to the clerk?

11           MS. LEDDY:  We have, and we have all signed it, Your

12  Honor.

13           THE COURT:  Everybody's signed it, initialed that

14  change, and changed it from February the 20th to February the

15  9th; is that correct?

16           MS. LEDDY:  That's correct, Your Honor.

17           THE COURT:  All right.  Thank you.

18           All right.  Mr. Crosson, with that in mind -- with

19  that in mind, the acts that are alleged to have occurred in the

20  indictment and for which there's been a relevant conduct

21  stipulation and to which you've indicated have occurred through

22  your testimony all occurred on or about February 9th, 2022, at

23  or near Berkeley County, in the Northern District of West

24  Virginia; is that correct, sir?

25           THE DEFENDANT:  Correct.

```
1              THE COURT:  All right.  Thank you.

2              And again, as to where we were before, Ms. Leddy, now

3   are you satisfied if this case went to trial, there would be no

4   meritorious legal defense to the charge?

5              MS. LEDDY:  Yes, I'm satisfied, Your Honor.

6              THE COURT:  And are you satisfied that Mr. Crosson's

7   constitutional and other rights have been observed fully?

8              MS. LEDDY:  Yes, Your Honor.

9              THE COURT:  And do you concur in his now-stated

10  intention to enter a plea of guilty to this charge?

11             MS. LEDDY:  Yes, Your Honor.

12             THE COURT:  Thank you.

13             Mr. Crosson, I find that there is a sufficient

14  factual basis for your plea of guilty.

15             Sir, do you understand that you are pleading guilty

16  to felony offenses, and if your plea is accepted, you will be

17  adjudged guilty of those felony offenses?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you also understand that such judgment

20  may deprive you of valuable civil rights, such as your right to

21  vote, your right to hold public office, your right to serve on

22  a jury, and your right to possess a firearm or gun of any kind?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Have you discussed the statutory

25  penalties that you are facing?
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you understand as to Count 1 you

3   expose yourself to a maximum penalty of a term of imprisonment

4   of not more than ten years for a threat to kidnap or murder,

5   imprisonment for not more than six years for a threat of

6   assault, a fine of not more than $250,000, a term of supervised

7   release of not more than three years, and a special assessment

8   under Title 18, United States Code, Section 3013 of $100?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Mr. Moulton, is there any mandatory

11   minimum sentence that the defendant exposes himself to by

12   pleading guilty to Count 1?

13          MR. MOULTON:  There is a mandatory minimum of one

14   year probation, if there's a probationary sentence.  There's

15   a -- if there's a probationary sentence, there's a mandatory

16   minimum of one year for probation.  There's no other mandatory

17   minimums.

18          THE COURT:  All right.

19          Mr. Crosson, there is a mandatory minimum component

20   of your sentence, and that is that if a sentence of probation

21   is given, then you serve a mandatory minimum of one year of

22   probation.  Do you understand that, sir?

23          THE DEFENDANT:  Correct.

24          THE COURT:  And knowing that there's a mandatory

25   minimum component of the sentence that you may receive, does

1   that change your decision to enter into this plea agreement?

2              THE DEFENDANT:  No.

3              THE COURT:  All right.  Thank you.

4              Now, as to Count 2, you understand that you expose

5   yourself to a maximum penalty of a term of imprisonment of not

6   more than five years, a fine of not more than $250,000, and a

7   term of supervised release of not more than three years and a

8   special assessment under Title 18, United States Code, Section

9   3013 of $100.  You understand that?

10             THE DEFENDANT:  Correct.

11             THE COURT:  Now, Mr. Moulton, as to this charge, is

12   there a mandatory minimum sentence that the defendant could

13   expose himself to by pleading guilty to Count 2?

14             MR. MOULTON:  The same, one year of probation if it's

15   a probationary sentence, Your Honor.

16             THE COURT:  All right.  Mr. Crosson, there's a

17   mandatory minimum component to this sentence that you may

18   receive, and that is that if you are sentenced to probation,

19   you'd be sentenced to a mandatory minimum of one year

20   probation.  Do you understand that, sir?

21             THE DEFENDANT:  Correct.

22             THE COURT:  Knowing that there's a mandatory minimum

23   component, does that change your decision to enter into this

24   plea?

25             THE DEFENDANT:  It does not.

```
1              THE COURT:  And you understand that supervised
2    release means that after imprisonment, you will be supervised
3    by the probation office under conditions that will be set by
4    this Court?
5              THE DEFENDANT:  Correct.
6              THE COURT:  You understand that if you violate the
7    terms of your supervised release, the Court can revoke the term
8    of your supervised release and order you to serve a term in
9    prison?
10             THE DEFENDANT:  Correct.
11             THE COURT:  You understand that you will be required
12   to pay a special assessment of $200 for having been convicted
13   of two felony offenses?
14             THE DEFENDANT:  Correct.
15             THE COURT:  And you understand that you've agreed as
16   a condition of your plea agreement to pay this special
17   assessment within 40 days following the entry of your plea?
18             THE DEFENDANT:  Yes.
19             THE COURT:  Sir, do you understand that as part of
20   your fine, you could be required to pay the cost of
21   incarceration and/or the cost of supervision upon release?
22             THE DEFENDANT:  Correct.
23             THE COURT:  Have you discussed those costs with
24   Ms. Leddy?
25             THE DEFENDANT:  Yes.
```

1          THE COURT:  Then you understand that it now costs

2     $3,688 per person per month for prison, $371 per month per

3     person for supervised release, and $2,980 per month per person

4     for a residential reentry center?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Sir, do you understand that the Court has

7     the authority to order restitution in your case?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And if applicable, do you understand that

10    the government may seek forfeiture in your case?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand, sir, that by pleading

13    guilty, if you are not a citizen of the United States, you may

14    be removed from the United States, denied citizenship, and

15    denied admission to the United States in the future?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Now, sir, do you understand that even

18    though this is a binding plea agreement, the sentencing

19    guidelines may still play an important role in your case,

20    because the Court can only accept a plea agreement containing a

21    specific sentence if it determines that the sentence is

22    appropriate under the United States Sentencing Guidelines?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Have you and Ms. Leddy discussed the

25    application of the US Sentencing Guidelines to your case?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that the Court may

3    defer deciding whether to accept the plea agreement in your

4    case until after the presentence investigation report has been

5    completed?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that both you and the

8    government will have an opportunity to object to the

9    presentence report?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that parole has been

12    abolished and that you will not be released on parole if you

13    are sentenced to prison?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Mr. Crosson, do you understand that in

16    your plea agreement, you have agreed to give up your right to

17    appeal your sentence under many circumstances?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Sir, everyone found guilty of a crime in

20    federal court in this district has the right to appeal their

21    conviction and sentence to the Fourth Circuit Court of Appeals

22    in Richmond, Virginia.  In Richmond, a three-judge panel

23    reviews the conviction and sentence to see if it was done

24    correctly.

25          Do you understand that pursuant to paragraph A3 of

1    your plea agreement that you have waived your right to take a

2    direct appeal from the defendant's conviction or sentence under

3    Title 28, United States Code, Section 1291, or Title 18, United

4    States Code, Section 3742 subject to the following exceptions:

5    If the United States appeals from the sentence, Robert F.

6    Crosson may take a direct appeal from the sentence and, B, if,

7    one, the sentence exceeds the applicable statutory limits set

8    forth in the United States Code or, two, the sentence

9    unreasonably exceeds the guideline range determined by the

10   Court under the sentencing guidelines, Robert F. Crosson may

11   take a direct appeal from the sentence?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Do you understand that you only have the

14   right to appeal your guilty plea subject to those exceptions if

15   you believe it was unlawful or involuntary or that there was

16   some other fundamental defect in the proceeding that was not

17   waived in the plea agreement itself?

18              THE DEFENDANT:  Yes.

19              THE COURT:  However, you agree that your guilty plea

20   today is lawful and voluntary and that that there has been no

21   fundamental defect in the proceedings that you're aware of; is

22   that correct, sir?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Do you also understand that everyone has

25   the right to challenge their conviction or sentence or the

1   manner in which it was determined in any postconviction

2   proceeding, sometimes called a habeas corpus petition or

3   collateral attack, under Title 28, United States Code, Section

4   2255?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Do you understand that you have waived

7   the right to file a motion to vacate sentence under Title 28,

8   United States Code, Section 2255 attacking your conviction or

9   sentence and the right to file any other collateral proceeding

10  attacking your conviction or sentence?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that your only legal

13  remedies on appeal or collateral attack are for claims of

14  ineffective assistance of counsel or prosecutorial misconduct?

15          THE DEFENDANT:  Yes.

16          THE COURT:  However, you agree that there is

17  currently no known evidence of ineffective assistance of

18  counsel or prosecutorial misconduct; is that correct?

19          THE DEFENDANT:  Correct.

20          THE COURT:  Have you discussed the waiver of these

21  important appellate rights with your attorney, Ms. Leddy?

22          THE DEFENDANT:  I have.

23          THE COURT:  Having done so, do you still wish to

24  waive these rights, sir?

25          THE DEFENDANT:  I do not.

1              THE COURT:  You do not wish to --

2              THE DEFENDANT:  I do.

3              THE COURT:  All right.  Do you still wish to waive

4     your appellate rights as set forth in your plea agreement, sir?

5              THE DEFENDANT:  Yes.  Sorry about that.

6              THE COURT:  Thank you.

7         Ms. Leddy, do you believe that the defendant fully

8     understands the importance of the rights he is waiving?

9              MS. LEDDY:  Yes, Your Honor.

10             THE COURT:  Mr. Crosson, should you find some basis

11    on which to file an appeal, with few exceptions, any notice of

12    appeal must be filed within 14 days of judgment being entered

13    in your case.  Do you understand that, sir?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Mr. Crosson, I find that you understand

16    the nature of the charge and the consequences of a guilty plea

17    to the charge.

18         Now, sir, do you understand that you have the right

19    to continue to plead not guilty to these charges?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  Do you also understand that by pleading

22    guilty, you give up your right to a speedy and public trial by

23    a jury?

24             THE DEFENDANT:  Yes, I do.

25             THE COURT:  Do you understand that by pleading

1  guilty, you give up your right to force the government to come

2  forward with witnesses and evidence against you?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Sir, do you understand that you would

5  have been presumed innocent until the government presented

6  enough evidence to satisfy both a judge and a jury beyond a

7  reasonable doubt of your guilt?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Do you understand that when you admit

10 your guilt, as you have here, you relieve the government of the

11 burden of proving your guilt?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  Do you understand that you would have the

14 right to the assistance of counsel at trial?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that you and your

17 attorney, Ms. Leddy, would have had the right to confront and

18 cross-examine your accusers and to test the truth of what they

19 said?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that by pleading

22 guilty, you give up that right?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that had you desired to

25 go to trial and wished to call witnesses, that you would have

1    been entitled to the services of the US Marshal to bring

2    witnesses to court under subpoena?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that by pleading

5    guilty, you give up your right to call witnesses except at your

6    sentencing hearing?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that you would have the

9    right to move to suppress, or keep away from the jury's hearing

10   and consideration, any evidence of any nature that had been

11   illegally or unlawfully obtained?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that had you desired to

14   go to trial, that you would have the right to testify at trial?

15             THE DEFENDANT:  Yes.

16             THE COURT:  However, you understand that you could

17   not have been compelled or forced to testify at trial?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you understand that you would have the

20   right to go to trial and remain silent, that is, not to take

21   the witness stand or call any witnesses or present any evidence

22   whatsoever on your own behalf?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand that the Court would

25   have instructed the jury that they could not convict you

 1   because you'd exercised your constitutional right to remain

 2   silent, but could only base their decision on an offer of proof

 3   from the government?

 4          THE DEFENDANT:  Yes.

 5          THE COURT:  Do you understand that you give up your

 6   right to a unanimous verdict from a jury?

 7          THE DEFENDANT:  Yes.

 8          THE COURT:  Ms. Leddy, do you believe that

 9   Mr. Crosson understands the consequences of his guilty plea?

10          MS. LEDDY:  Yes, Your Honor.

11          THE COURT:  Mr. Crosson, I find that you understand

12   the constitutional and other legal rights you are giving up by

13   pleading guilty.

14          Mr. Crosson, knowing all of those things, do you

15   still wish to plead guilty at this time?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Has any person forced you, threatened

18   you, coerced you, intimidated you, or talked you into entering

19   a guilty plea against your will?

20          THE DEFENDANT:  No.

21          THE COURT:  Are you acting voluntarily and of our own

22   free will in entering this guilty plea?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Mr. Crosson, are you pleading guilty

25   because you are guilty of the crimes charged in Counts 1 and 2

1   of the original indictment?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Sir, has anyone promised you or told you

4   something that is different from what I have told you today to

5   get you to plead guilty?

6        THE DEFENDANT:  No.

7        THE COURT:  Is your plea the result of any promises

8   other than those promises specifically contained in your

9   written plea agreement?

10        THE DEFENDANT:  No.

11        THE COURT:  Are you pleading guilty to protect

12   anyone, sir?

13        THE DEFENDANT:  No.

14        THE COURT:  Has anyone promised or predicted the

15   exact sentence which will be imposed upon you in this matter?

16        THE DEFENDANT:  Pardon me?

17        THE COURT:  Has anyone promised or predicted the

18   exact sentence which will be imposed upon you in this matter?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Well, there's a binding plea, but has

21   anybody promised that's what the Court's going to do?

22        THE DEFENDANT:  No.  Thank you.

23        THE COURT:  So let's do that again.

24        Has anyone promised or predicted the exact sentence

25   which will be imposed upon you in this matter?

1          THE DEFENDANT:  No.

2          THE COURT:  Do you understand that at this time, no

3    one could know the exact sentence which will be imposed in your

4    case?

5          THE DEFENDANT:  Correct.

6          THE COURT:  Mr. Crosson, have you been able to fully

7    understand what is going on in these proceedings today?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Mr. Crosson, I find that your guilty plea

10   is voluntary.

11         Now, again, sir, at this time do you have any

12   questions or second thoughts about entering a plea of guilty to

13   these charges?

14         THE DEFENDANT:  No.

15         THE COURT:  Would you please stand for me.

16         How do you plead to Count 1 of the original

17   indictment charging you with influencing a federal official by

18   threat?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  How do you plead to Count 2 of the

21   original indictment charging you with threat by interstate

22   communication?

23         THE DEFENDANT:  Guilty.

24         THE COURT:  Thank you.  Please be seated.

25         In the case of United States versus Robert F.

1    Crosson, I find that Mr. Crosson is fully competent and capable

2    of entering into an informed plea.  I find that there is a

3    sufficient factual basis for his plea of guilty.  I find that

4    Mr. Crosson understands the nature of the charge and the

5    consequences of a guilty plea to the charge.  I find that

6    Mr. Crosson understands the constitutional and other legal

7    rights he is giving up because of his plea.  And I find that

8    Mr. Crosson's plea is voluntary.

9         While I defer accepting the terms of the plea

10   agreement and adjudging the defendant guilty to the sentencing

11   court, I do accept the plea of guilty to Counts 1 and 2 of the

12   original indictment.

13        Mr. Crosson, the sentencing court must consider the

14   following factors when determining the sentence that you will

15   receive:  The nature and circumstances of the offense; your

16   history and characteristics; the necessity of punishing you,

17   deterring you, protecting the public from you, or providing you

18   with training, medical care, or other treatment; the kinds of

19   sentences and the sentencing range established by the

20   sentencing guidelines; the need to give defendants with similar

21   criminal records similar sentences; and the need to provide

22   restitution to any victims of the offense.

23        In order to help the Court consider these factors,

24   the probation office is required to conduct a presentence

25   investigation of you and submit a report to the sentencing

1    court.  The information in this report might have an impact

2    upon any sentence that you ultimately receive.  I strongly

3    encourage you to discuss this process and your participation in

4    the same with your attorney Ms. Leddy.

5              Now, sir, understand that you must not commit any

6    crimes between now and sentencing, because there are additional

7    punishments that may be imposed for committing additional

8    crimes.  Do you understand?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Pursuant to Section 6A1 of the United

11   States Sentencing Guidelines, I order the probation office to

12   conduct a presentence investigation of Mr. Crosson, prepare a

13   draft presentence investigation report, and disclose its

14   contents to the government and Mr. Crosson.

15             I further direct that the probation officer and all

16   parties comply with Federal Rule of Criminal Procedure 32 and

17   US Sentencing Guideline Section 6A1.2 regarding deadlines for

18   objection -- disclosure, objection, departure motion, or

19   sentencing statement requirements.  The sentencing court will

20   set this matter for sentencing following receipt of the

21   presentence report.

22             Ms. Leddy, Mr. Moulton, if either of you anticipate a

23   lengthy sentencing hearing, please notify the sentencing court

24   in advance so that an adequate amount of time can be set aside

25   for that hearing.

1              Mr. Moulton, you may be not aware of it -- I know,

2    Ms. Leddy, you are -- that Judge Groh normally sets her

3    sentencings for approximately 45 minutes, so if you're

4    anticipating a longer period of time, you need to make those

5    arrangements with her chambers in advance.

6              MR. MOULTON:  Understood, Your Honor.

7              MS. LEDDY:  Thank you, Your Honor.

8              THE COURT:  All right, counsel.

9              Anything further we need to address on behalf of the

10   government, Mr. Moulton?

11             MR. MOULTON:  No, Your Honor.

12             THE COURT:  Anything on behalf of Mr. Crosson,

13   Ms. Leddy?

14             MS. LEDDY:  Nothing from the defense, Your Honor.

15             THE COURT:  With that in mind, the defendant is

16   released pursuant to the order setting conditions of release

17   previously entered herein and we stand adjourned.  Thank you.

18             (Proceedings concluded at 12:03 p.m.)

19

20

21

22

23

24

25

```
1                         CERTIFICATE

2

3          I, Cindy L. Knecht, Registered Professional Reporter

4   and Official Reporter of the United States District Court for

5   the Northern District of West Virginia, do hereby certify that

6   the foregoing is a true and correct transcript to the best of

7   my ability of the taped proceedings had in the above-styled

8   action on June 9, 2023, as reported by me in stenotypy.

9        I certify that the transcript fees and format comply with

10  those prescribed by the Court and Judicial Conference of the

11  United States.

12        Given under my hand this 28th day of May 2024.

13                          /s/Cindy L. Knecht
                            _____
14                          Cindy L. Knecht, RMR/CRR
                            Official Reporter, United States
15                          District Court for the Northern
                            District of West Virginia
16                           - - -

17

18

19

20

21

22

23

24

25
```