1             UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF WEST VIRGINIA

3 United States of America,

4       Plaintiff,

5          VS.               CRIMINAL ACTION NO.

6                           3:23-cr-6

7 Robert F. Crosson,

8       Defendant.

9                  - - -

10     Proceedings had in the plea hearing of the above-styled
action on October 23, 2023, before Honorable Robert W. Trumble,

11 Magistrate Judge, at Martinsburg, West Virginia.

12                  - - -

13     APPEARANCES:

14     On behalf of the United States of America:

15     DeMarr Moulton
    Assistant United States Attorney

16     United States Attorney's Office
    700 Grant Street, Suite 4000

17     Pittsburgh, PA  14219
    412.894.7434

18

19     On behalf of the Defendant:

20     Kristen M. Leddy
    Assistant Federal Public Defender

21     Federal Public Defender's Office
    651 Foxcroft Avenue, Suite 202

22     Martinsburg, WV  25401
    304.260.9421

23

24     The defendant was present in person.

25     Proceedings recorded utilizing tape.
    Transcript produced by computer-aided transcription.

```
 1                                    Monday Afternoon Session,

 2                                    October 23, 2023, 2:19 p.m.

 3                          - - -

 4            THE CLERK:  This is the case of the United States of

 5   America versus Robert F. Crosson, Criminal Number 3:23-CR-6.

 6   The government is represented by counsel, DeMarr Moulton.  The

 7   defendant is present in person and by counsel, Kristen Leddy.

 8            Are the parties ready to proceed?

 9            MR. MOULTON:  Yes, Your Honor.

10            MS. LEDDY:  The defense is ready, Your Honor.

11            THE COURT:  All right.  Good afternoon, everyone.

12   We're scheduled this afternoon for a nonbinding guilty plea to

13   an indictment.

14            Ms. Leddy, it's my understanding that Mr. Crosson

15   desires to plead guilty to the charge contained in Count 1 of

16   the original indictment; is that correct?

17            MS. LEDDY:  Yes, Your Honor.

18            THE COURT:  All right.  Thank you.

19            Mr. Crosson, would you please stand, raise your right

20   hand, and be sworn by the clerk.

21            (Defendant sworn.)

22            THE COURT:  If you would, sir, pull that microphone

23   right over in front of you and speak directly into the

24   microphone so we have a nice clear record.  Can you do that for

25   me?
```

```
1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Thank you.

3              Sir, do you understand that you are under oath, and

4    if you answer any of my questions falsely, your answers may

5    later be used against you in another prosecution for perjury or

6    for making a false statement?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Sir, do you understand that if you lie,

9    it may result in a higher sentence for you?

10             THE DEFENDANT:  Yes.

11             THE COURT:  During the course of this hearing, I'm

12   going to be asking you several questions.  At any point you

13   should feel free to ask questions, ask for an explanation if

14   you do not understand my question, or ask me to pause the

15   proceedings so that you may confer with your attorney before

16   responding.  Do you understand, sir?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Would you state your full name for the

19   record, please.

20             THE DEFENDANT:  Robert Francis Crosson.

21             THE COURT:  Mr. Crosson, how old are you?

22             THE DEFENDANT:  60.

23             THE COURT:  And how much education have you had, sir?

24             THE DEFENDANT:  Associate's degree.

25             THE COURT:  So you can read, write, and understand
```

1  English?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Have you recently been under the care of

4  a doctor, a psychiatrist, or other medical professional for any

5  serious physical or mental illness, including treatment for an

6  addiction to drugs or alcohol?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Does any of that treatment affect your

9  ability to understand the indictment that was filed against

10 you?

11          THE DEFENDANT:  No.

12          THE COURT:  Did it affect your ability to understand

13 the terms and conditions of the plea agreement offered by the

14 government?

15          THE DEFENDANT:  No.

16          THE COURT:  Does it affect your ability to

17 communicate with your attorney concerning the charges contained

18 in the indictment, any defenses thereto, or any of the terms or

19 conditions contained in your plea agreement?

20          THE DEFENDANT:  No.

21          THE COURT:  Are you currently using any form of a

22 controlled substance or any medication or alcohol that might

23 affect your ability to understand this proceeding today?

24          THE DEFENDANT:  No.

25          THE COURT:  Ms. Leddy, you've been dealing with

1    Mr. Crosson.  Do you have any reason to question his

2    competence?

3                    MS. LEDDY:  No, Your Honor.

4                    THE COURT:  Mr. Crosson, are you here today to enter

5    a guilty plea?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  Based on your responses, sir, I find that

8    you are competent and capable of entering an informed plea.

9                    Sir, my name is Robert Trumble.  I am a United States

10   Magistrate Judge.  You have the right to have this plea taken

11   by an Article III Judge, sometimes called a District Judge.

12   Only you can give up that right, and I can only hear your plea

13   if you agree to it by signing a waiver.

14                   Now, I have on my bench a waiver that appears to bear

15   your signature.  Did you in fact sign this waiver, sir?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  Did you discuss it with Ms. Leddy before

18   you signed it?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  And you understand the purpose of the

21   waiver is to allow me to hear your plea today; is that correct?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  Sir, did anyone force or pressure you

24   into signing this waiver?

25                   THE DEFENDANT:  No.

 1          THE COURT:  Ms. Leddy, is it your understanding that
 2    your client agrees to the waiver?
 3          MS. LEDDY:  Yes, Your Honor.
 4          THE COURT:  I find that the waiver has been properly
 5    executed and direct that it be filed.
 6          Sir, do you understand that you have the right to be
 7    represented by counsel at every stage of these proceedings,
 8    including your sentencing, and if you cannot afford counsel,
 9    you have a right to have counsel appointed on your behalf?
10          THE DEFENDANT:  Yes.
11          THE COURT:  Ms. Leddy, do you or any member of your
12    office or firm -- not a firm, but anybody in your office
13    represent anyone, including codefendants, who might be
14    interested in the outcome of this matter?
15          MS. LEDDY:  No, Your Honor.
16          THE COURT:  Thank you.
17          Mr. Crosson, do you understand that you have the --
18    do you believe that you've had adequate time to discuss your
19    case fully with Ms. Leddy?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Has she been able to answer your
22    questions about how best to proceed in this case?
23          THE DEFENDANT:  Yes.
24          THE COURT:  Is there anything your lawyer has not
25    done which you've asked her to do?

1            THE DEFENDANT:  No.

2            THE COURT:  Are you completely satisfied with the

3    legal advice that you have received from Ms. Leddy?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Ms. Leddy, during the time that you've

6    represented Mr. Crosson, has he been cooperative with you, sir?

7            MS. LEDDY:  Yes, Your Honor.

8            THE COURT:  Have you had adequate time to discover

9    the government's case?

10           MS. LEDDY:  We have.

11           THE COURT:  Have you had adequate time to consider

12   the possible defenses to the charge?

13           MS. LEDDY:  Yes, Your Honor.

14           THE COURT:  Do you know of any viable defense to the

15   charge contained in Count 1 of the original indictment?

16           MS. LEDDY:  No, Your Honor.

17           THE COURT:  Have you had adequate time to consider

18   the possible sentences that may be imposed?

19           MS. LEDDY:  Yes, Your Honor.

20           THE COURT:  Have you discussed all of those issues

21   with your client?

22           MS. LEDDY:  Yes, we have.

23           THE COURT:  Thank you.

24           We have a plea agreement in this case.

25           Mr. Moulton, would you summarize the contents of the

1   plea agreement for the Court.

2          MR. MOULTON:  Yes, Your Honor.  The plea agreement is

3   dated September 27th, 2023.  A1 is basically Mr. Crosson is

4   agreeing to plead guilty to Count 1, and A2 is the Count 2 will

5   be dismissed, but he'll acknowledge the responsibility for the

6   conduct.

7          A5 is the appellate waiver where Mr. Crosson can

8   appeal if we -- if the United States appeals from the sentence,

9   he may take that direct appeal from the sentence, or if the

10  sentence he ends up getting exceeds the applicable statutory

11  limits, or if it unreasonably exceeds the guideline range

12  determined by the Court.

13         He also waives the right to file a 2255 attacking his

14  conviction or sentence in any other collateral proceedings.  It

15  does not foreclose his waiver -- his appeal by raising a claim

16  of ineffective assistance.

17         B1, again, is where we -- the United States agrees to

18  dismiss Count 2, but it can be -- if he's permitted to withdraw

19  his guilty plea, we can reinstate that charge.  B3 is where the

20  United States agrees to recommend the two-level adjustment for

21  acceptance of responsibility.

22         C1 is the penalties, which is a term of imprisonment

23  not more than ten years, $250,000, a term of supervised release

24  of not more than three years, and a special assessment of $100.

25         C2 is the factual stipulation.  I think you'll ask

1    for the facts later.  I can read that now or later.

2            THE COURT:  It's either you or me, Mr. Moulton.  You

3    can read it and we can refer back to it, so if you want to read

4    the stipulated relevant conduct as contained in, what is that,

5    C2?

6            MR. MOULTON:  Yes, Your Honor.  C2 reads, the parties

7    hereby stipulate and agree to the following facts:  On or about

8    February 9, 2022, Robert F. Crosson called the office of United

9    States Senator Joe Manchin located in Martinsburg, West

10   Virginia, in the Northern District of West Virginia.  The call

11   was not answered, so Crosson left a voice mail stating, "Hey,

12   you motherfucker, a bullet coming to your head soon.  Mr. Coal

13   Industry, how you doing?  Build back better, huh?  Filibuster,

14   huh?  You're a fucking pig."

15           On May 2, 2022, special agents with the FBI

16   interviewed Crosson.  During the interview, Crosson admitted to

17   making the call and leaving the voice mail message.  He

18   acknowledged that he made the call while he was located in the

19   state of New York, thus the threat was transmitted in

20   interstate commerce.

21           Crosson knowingly and willfully made the call

22   threatening Senator Manchin because he disagrees with Senator

23   Manchin and his political views and official actions, thus

24   Crosson made threats with the intent to impede or interfere

25   with such while engaged in the performance of official duties

1   and with the intent to retaliate against such on account of the

2   performance of official duties.  Senator Manchin reasonably

3   perceived the threat as a true threat.  After the meeting with

4   the FBI, Crosson made no further threats to Senator Manchin.

5           Those are the most salient terms of the plea

6   agreement, Your Honor.

7           THE COURT:  All right, Mr. Moulton.  Thank you.

8           Ms. Leddy, did Mr. Moulton provide a fair summary of

9   the agreement?

10          MS. LEDDY:  Yes, Your Honor.

11          THE COURT:  Mr. Crosson, do you understand what this

12  agreement does?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand what this agreement

15  requires of you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you have any questions about your plea

18  agreement?

19          THE DEFENDANT:  I do not.

20          THE COURT:  Mr. Moulton, would you tender the plea

21  agreement to Ms. Leddy for her review and have you signed the

22  plea agreement, sir?

23          MR. MOULTON:  I've signed it, Your Honor.

24          THE COURT:  You have.

25          MR. MOULTON:  Yes, Your Honor.

 1              THE COURT:  All right.  So Mr. Crosson, I'd like you

 2     to take a look at the plea agreement that was just handed to

 3     your attorney.  First of all, how many pages are in the plea

 4     agreement?

 5              THE DEFENDANT:  Five.

 6              THE COURT:  Now, you signed that agreement.  Is that

 7     your signature on the bottom of the fifth and last page of the

 8     plea agreement?

 9              THE DEFENDANT:  Yes, it is.

10              THE COURT:  Mr. Crosson, were each of the paragraphs

11     of the plea agreement discussed with you prior to your reaching

12     an agreement with the government?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Now, the plea agreement contains

15     recommendations and stipulations.  Do you understand that the

16     Court must defer its decision to accept or reject

17     recommendations and stipulations until it considers the

18     presentence report that would be prepared in your case?

19              THE DEFENDANT:  Yes.

20              THE COURT:  And do you understand that the terms of

21     the plea agreement are merely recommendations to the Court;

22     that the Court can reject the recommendations and stipulations

23     and you will not be allowed to withdraw your plea of guilty?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Do you understand that under a concept

1  known as relevant conduct, the Court may take into account any

2  conduct, circumstances, and injuries relevant to the crime to

3  which you are pleading guilty?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that under the terms of

6  the plea agreement, you and the government have stipulated to

7  the information contained in the relevant conduct section which

8  is on the fourth page of the agreement in paragraph C2 as read

9  by Mr. Moulton.  Do you understand that that's a part of the

10  relevant conduct stipulation as set forth in your plea

11  agreement?

12          THE DEFENDANT:  Yes.

13          THE COURT:  I also want to direct your attention to

14  page 2 and paragraph A2, which provides that you acknowledge

15  that the defendant's responsibility for the conduct charged in

16  Count 2 of the indictment at Northern District of West Virginia

17  Case Number 3:23-CR-6 and stipulates that the conduct charged

18  in that count may be considered by the probation office or by

19  the Court in calculating the guideline range and in imposing

20  sentence.

21          THE DEFENDANT:  Yes.

22          THE COURT:  That's also a part of the relevant

23  conduct stipulation as set forth in your plea agreement.  You

24  understand that; is that correct, sir?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And you understand that the Court is not

2     bound by these stipulations, and if the Court does not accept

3     these stipulations, you do not have the right to withdraw your

4     guilty plea?

5          THE DEFENDANT:  Correct.

6          THE COURT:  Sir, does the written plea agreement

7     represent the complete agreement between you and the

8     government?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Is there anything that you and the

11    government have agreed to that is not contained in that written

12    document?

13         THE DEFENDANT:  No.

14         THE COURT:  Mr. Crosson, do you want me to accept the

15    plea agreement?

16         THE DEFENDANT:  Yes.

17         THE COURT:  I find that the defendant, Mr. Crosson,

18    understands and agrees with the terms contained in the plea

19    agreement.  I order the original plea agreement be filed as

20    part of the record in this case.

21         Ms. Leddy, would you tender that to the clerk of

22    court for me.

23         Mr. Crosson, have you received a copy of the

24    indictment filed against you?

25         THE DEFENDANT:  Yes.

 1                    THE COURT:  Have you had an opportunity to read the

 2     indictment?

 3                    THE DEFENDANT:  Yes.

 4                    THE COURT:  Would you like me to read the indictment

 5     to you, or will you waive reading of the indictment in open

 6     court?

 7                    THE DEFENDANT:  What would you say?

 8                    THE COURT:  Would you like me to read the indictment

 9     to you, or will you waive reading the indictment in open court?

10                    THE DEFENDANT:  Waive.

11                    THE COURT:  Thank you, sir.

12                    Sir, how do you plead to the charge contained in

13     Count 1 of the original indictment?

14                    THE DEFENDANT:  Guilty.

15                    THE COURT:  Now, before I accept your plea, I want to

16     make sure that there is a factual basis for your plea, that you

17     understand the nature of the charge against you and the

18     consequences of pleading guilty to the charge, that you

19     understand the constitutional and other legal rights you will

20     give up by pleading guilty, and that you are pleading guilty

21     voluntarily.

22                    Sir, you are charged in Count 1 of the original

23     indictment with influencing a federal official by threat in

24     violation of Title 18, United States Code, Section 115

25     (a)(1)(B).  Now, Title 18, United States Code, Section 115

1    (a)(1)(B) states in its pertinent part as follows:  Whoever

2    threatens to assault, kidnap, or murder a United States

3    official, a United States judge, a federal law enforcement

4    officer, or an official whose killing would be a crime under

5    said section, with the intent to impede, intimidate, or

6    interfere with such official judge or law enforcement officer

7    while engaged in the performance of official duties with the

8    intent to retaliate against such official, judge, or law

9    enforcement officer on account of the performance of official

10   duties shall be punished as provided in Subsection (b).

11          Title 18, United States Code, Section 115 (b)(4),

12   also cited in the indictment, provides for penalties for

13   violation of this section.  It states as follows:  A threat

14   made in violation of this section shall be punished by a fine

15   under this title, or imprisonment for a term of not more than

16   ten years, or both, except that the imprisonment for a

17   threatened assault shall not exceed six years.

18          Sir, do you understand the criminal statutes under

19   which you've been charged?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Now, if the government had to go to trial

22   in this case, the government would have to prove the following

23   elements of Title 18, United States Code, Section 115 (a)(1)(B)

24   against you beyond a reasonable doubt:  First, you threatened

25   to assault or murder a person; second, at the time of the

1    alleged threat, the threatened person was a United States

2    official; and third, you acted with the intent to impede,

3    intimidate, or interfere with the US official while the

4    official was engaged in the performance of official duties or

5    with the intent to retaliate against such official on account

6    of the performance of official duties.

7              Sir, do you understand the elements of the statute

8    under which you've been charged?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Now, sir, considering those definitions,

11   do you consider yourself to be guilty of violating Title 18,

12   United States Code, Section 115(a)(1)(B)?

13             THE DEFENDANT:  Yes.

14             THE COURT:  All right.  Mr. Moulton, would you

15   present your witness or proffer as to what the government would

16   have been able to prove in this case.

17             MR. MOULTON:  I'd refer back to Section C2 of the

18   plea agreement, unless you want me to repeat it again, Your

19   Honor.

20             THE COURT:  So you're offering your relevant conduct

21   stipulation as set forth on page --

22             MR. MOULTON:  4.

23             THE COURT:  -- 4 in paragraph C2 as your proffer to

24   set forth the factual basis as to what the government would

25   have been able to prove; is that correct, sir?

```
 1              MR. MOULTON:  Yes, Your Honor.

 2              THE COURT:  All right.  Thank you.

 3              Ms. Leddy, do you have any objections to the proffer

 4   made by the government in the form of the relevant conduct

 5   statement as contained in paragraph C2 on page 4 of the plea

 6   agreement?

 7              MS. LEDDY:  No, Your Honor.

 8              THE COURT:  Mr. Crosson, do you have any objection to

 9   the proffer as stipulated to by the government?

10              THE DEFENDANT:  No, Your Honor.

11              THE COURT:  Mr. Crosson, is that evidence as set

12   forth in the relevant conduct stipulation, is that

13   substantially correct, sir?

14              THE DEFENDANT:  Correct.

15              THE COURT:  And did that proffer accurately involve

16   your -- reflect your involvement in what occurred?

17              THE DEFENDANT:  Yes.

18              THE COURT:  All right, sir.  Just for the record, I

19   need you to explain to me what you did that makes you guilty of

20   influencing a federal official by threat in violation of Title

21   18, United States Code, Section 115(a)(1)(B).

22              THE DEFENDANT:  I threatened Senator Joe Manchin of

23   West Virginia with a bullet.

24              THE COURT:  And your intent was to impede or

25   intimidate or interfere with Mr. Manchin while he was an
```

 1   official engaged in the performance of his duties?

 2           THE DEFENDANT:  Correct.

 3           THE COURT:  And this act occurred on or about

 4   February 9, 2022, at or near Berkeley County, in the Northern

 5   District of West Virginia?

 6           THE DEFENDANT:  Yes.

 7           THE COURT:  All right.  Ms. Leddy, are you -- again,

 8   are you satisfied if this case went to trial, there would be no

 9   meritorious legal defense to the charge?

10           MS. LEDDY:  I am satisfied, Your Honor.

11           THE COURT:  And are you satisfied that Mr. Crosson's

12   constitutional and other rights have been observed fully?

13           MS. LEDDY:  Yes, Your Honor.

14           THE COURT:  And do you concur in his now-stated

15   intention to enter a plea of guilty to this charge?

16           MS. LEDDY:  Yes, Your Honor.

17           THE COURT:  Thank you.

18           Mr. Crosson, I find that there is a sufficient

19   factual basis for your plea of guilty.

20           Now, sir, do you understand that you are pleading

21   guilty to a felony offense, and if your plea is accepted, you

22   will be adjudged guilty of that felony offense?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Do you also understand that such judgment

25   may deprive you of valuable civil rights, such as your right to

1   vote, your right to hold public office, your right to serve on

2   a jury, and your right to possess a firearm or gun of any kind?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Have you discussed the statutory

5   penalties that you are facing as a result of this charge?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Then you understand that you expose

8   yourself to a maximum penalty of a term of imprisonment of not

9   more than ten years for a threat to kidnap or murder, and

10  imprisonment for not more than six years for a threat to

11  assault, a fine of not more than $250,000, and a term of

12  supervised release of not more than three years?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Mr. Moulton, is there any mandatory

15  minimum component to the sentence that the defendant exposes

16  himself to by pleading guilty to Count 1 of the original

17  indictment?

18           MR. MOULTON:  No, Your Honor.  I guess there is a

19  technical mandatory of one year probation, but no imprisonment

20  mandatory, Your Honor.

21           THE COURT:  Is there any mandatory component, any

22  mandatory minimum, that you're aware of under the statute?

23           MR. MOULTON:  If he was going to get a probation

24  sentence, he would have to get at least one year of probation.

25           THE COURT:  Okay.  And that's in -- Ms. Leddy.

1          MS. LEDDY:  I believe if he receives a term of

2    incarceration, Your Honor, then that term would have to be

3    followed by at least one year of supervised release.

4          THE COURT:  So there is a mandatory supervised

5    release provision?

6          MS. LEDDY:  I will double-check.

7          THE COURT:  Let's get this cleared up here.  Are you

8    using probation interchangeably with supervised release and

9    interchangeably with probation?

10         MR. MOULTON:  No, Your Honor.  There's no mandatory

11   minimum imprisonment for this.

12         THE COURT:  Any mandatory minimum.  And if there's a

13   mandatory minimum of supervised release or probation, that's

14   what I'm trying to get at.  I just need to understand -- I need

15   to advise the defendant as to any mandatory minimum component

16   of the sentence that he may receive.

17         MR. MOULTON:  According to the PSR in this case, it

18   just says that the supervised release cannot be more than three

19   years.

20         THE COURT:  All right.  All right.  Thank you.

21         We've had a Rule 11 hearing on this case before, and

22   both -- in the prior case both of the -- the defendant was

23   pleading guilty to both of the counts in the indictment, and I

24   did not recall that there was any mandatory minimum components

25   of either of the charges that were contained in the previous

1   indictment.  And this is still the original indictment, only

2   he's only pleading to one of the counts in the indictment.  So

3   if there is a mandatory minimum component, I'm not aware of any

4   as it relates to these charges.

5           MR. MOULTON:  I've concurred, Your Honor.

6           THE COURT:  I understand that there's a difference

7   between the maximum sentence.  He can be imprisoned for ten

8   years for one component, six years for another.  He can be

9   fined up to $250,000, and he can be charged to a term of

10  supervised release of not more than three years, but that's not

11  a mandatory minimum.  I'm looking for what the Court has to

12  impose a sentence.  I don't see any mandatory minimums.

13          MR. MOULTON:  I agree with that, Your Honor.

14          MS. LEDDY:  That's correct, Your Honor.

15          THE COURT:  Thank you.

16          Mr. Crosson, I don't see that there's any mandatory

17  minimum component to the sentence for the charge that's

18  contained in Count 1.  But do you understand that supervised

19  release means that after imprisonment, you will be supervised

20  by the probation office under conditions that will be set by

21  this Court?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And do you understand that if you violate

24  the terms of your supervised release, the Court may revoke the

25  term of your supervised release and order you to serve a term

1    in prison?

2             THE DEFENDANT:  Yes.

3             THE COURT:  And do you understand that you will be

4    required to pay a special assessment of $100 for having been

5    convicted of a felony offense?

6             THE DEFENDANT:  Yes.

7             THE COURT:  And do you understand that you've agreed

8    as a condition of your plea agreement to pay this special

9    assessment within 40 days following the entry of your plea?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Sir, do you understand that as part of

12    your fine, you could be required to pay the cost of

13    incarceration and/or the cost of supervision upon release?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Have you discussed those costs with

16    Ms. Leddy?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Then you understand that it now costs

19    $3,688 per month per person for prison, $371 per month per

20    person for supervised release, and $2,980 per month per person

21    for a residential reentry center?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Sir, do you understand that the Court has

24    the authority to order restitution in your case?

25             THE DEFENDANT:  Yes.

```
 1              THE COURT:  And if applicable, do you understand that
 2    the government may seek forfeiture in your case?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  And do you understand that by pleading
 5    guilty, if you are not a citizen of the United States, you may
 6    be removed from the United States, denied citizenship, and
 7    denied admission to the United States in the future?
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  Now, sir, do you understand that the
10    United States Sentencing Guidelines play an important role in
11    determining a sentence in your case?
12              THE DEFENDANT:  Yes.
13              THE COURT:  Have you and Ms. Leddy discussed the
14    application of the US Sentencing Guidelines to your case?
15              THE DEFENDANT:  Yes, we have.
16              THE COURT:  Do you understand that the Court will not
17    be able to determine the applicable advisory guideline sentence
18    for your case until after the presentence investigation report
19    has been completed and you and the government have had an
20    opportunity to review it and to challenge the facts determined
21    by the probation officer and the application of the guidelines
22    recommended by the probation officer?
23              THE DEFENDANT:  Yes.
24              THE COURT:  Do you understand that the sentence
25    imposed upon you by the Court may be different from any
```

1    estimate Ms. Leddy may have given you or what you thought it

2    would be?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Sir, do you understand that the Court

5    must calculate the applicable advisory US Sentencing Guidelines

6    and consider that range, and the Court must also consider

7    possible departures under the US Sentencing Guidelines and

8    other sentencing factors under Title 18, United States Code,

9    Section 3553(a)?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand that the Court is not

12   bound by the advisory guideline range and has the authority to

13   impose a sentence that is more severe or less severe than the

14   sentence called for by the guidelines?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Sir, do you understand that parole has

17   been abolished, and that you will not be released on parole if

18   you are sentenced to prison?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Sir, do you understand that even if you

21   do not like the sentence imposed upon you by the Court, you

22   will still be bound by your plea and will have no right to

23   withdraw it?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Sir, do you also understand that you have

 1   the right to testify at your sentencing hearing, should you so

 2   desire?

 3               THE DEFENDANT:  Yes.

 4               THE COURT:  And Mr. Crosson, do you understand that

 5   in your plea agreement you have agreed to give up your right to

 6   appeal your sentence under many circumstances?

 7               THE DEFENDANT:  Yes.

 8               THE COURT:  Sir, everyone found guilty of a crime in

 9   federal court in this district has the right to appeal their

10   conviction and sentence to the Fourth Circuit Court of Appeals

11   in Richmond, Virginia.  In Richmond, a three-judge panel

12   reviews the conviction and sentence to see if it was done

13   correctly.  Do you understand that pursuant to the terms of

14   paragraph A5 of your plea agreement that you have waived your

15   right to take a direct appeal from your conviction or sentence

16   under Title 28, United States Code, Section 1291, or 18, United

17   States Code, Section 3742.  Do you understand that?

18               THE DEFENDANT:  Yes.

19               THE COURT:  Now, there are some exceptions.  An

20   exception to that waiver would be that if the United States

21   appeals from the sentence, you may take a direct appeal from

22   the sentence, and the second is if the sentence exceeds the

23   applicable statutory limits set forth in the United States Code

24   or the sentence unreasonably exceeds the guideline range

25   determined by the Court under the sentencing guidelines, you

1    may take a direct appeal from the sentence.

2            THE DEFENDANT:  Yes.

3            THE COURT:  Other than those exceptions, do you

4    understand that you only have the right to appeal your guilty

5    plea if you believe it was unlawful or involuntary or that

6    there was some other fundamental defect in the proceedings that

7    was not waived in the plea agreement itself?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  However, you agree that your guilty plea

10   today is lawful and voluntary and that there has been no

11   fundamental defect in the proceedings that you are aware of; is

12   that correct, sir?

13           THE DEFENDANT:  Correct.

14           THE COURT:  Do you also understand that everyone has

15   the right to challenge their conviction or sentence or the

16   manner in which it was determined in any postconviction

17   proceeding, sometimes called a habeas corpus petition or

18   collateral attack, under Title 28, United States Code, Section

19   2255?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Do you understand that pursuant to the

22   terms of paragraph A5 of the plea agreement that you have

23   waived your right to challenge -- have waived your right to

24   file a motion to vacate sentence under Title 28, United States

25   Code, Section 2255 attacking your conviction or the sentence or

1   the right to file any other collateral proceeding attacking

2   your conviction or sentence?

3               THE DEFENDANT:  Yes.

4               THE COURT:  Do you understand that your only legal

5   remedies on appeal or collateral attack are for claims of

6   ineffective assistance of counsel or prosecutorial misconduct?

7               THE DEFENDANT:  Yes.

8               THE COURT:  However, you agree that there is

9   currently no known evidence of ineffective assistance of

10  counsel or prosecutorial misconduct; sir?

11              THE DEFENDANT:  Correct.

12              THE COURT:  Have you discussed the waiver of these

13  important appellate rights with Ms. Leddy?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Having done so, do you still wish to

16  waive these rights, sir?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Ms. Leddy, do you believe that

19  Mr. Crosson fully understands the importance of the rights he

20  is waiving?

21              MS. LEDDY:  Yes, Your Honor.

22              THE COURT:  Mr. Crosson, do you understand that

23  should you find some basis on which to file an appeal, with few

24  exceptions, any notice of appeal must be filed within 14 days

25  of judgment being entered in your case?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Mr. Crosson, I find that you understand

3    the nature of the charge and the consequences of a guilty plea

4    to the charge.

5              Now, sir, do you understand that you have the right

6    to continue to plead not guilty to this charge?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you also understand that by pleading

9    guilty, you give up your right to a speedy and public trial by

10   a jury?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand that by pleading

13   guilty, you give up your right to force the government to come

14   forward with witnesses and evidence against you?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Sir, do you understand that you would

17   have been presumed innocent until the government presented

18   enough evidence to satisfy both the judge and a jury beyond a

19   reasonable doubt of your guilt?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that when you admit

22   your guilt, as you have here, you relieve the government of the

23   burden of proving your guilt?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you understand that you would have the

1  right to the assistance of counsel at trial?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Do you understand that you and your

4  attorney would have had the right to confront and cross-examine

5  your accusers and to test the truth of what they said?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Do you understand by pleading guilty, you

8  give up that right?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you understand that had you desired to

11  go to trial and wished to call witnesses, that you would have

12  been entitled to the services of the US Marshal to bring

13  witnesses to court under subpoena?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Do you understand that by pleading

16  guilty, you give up your right to call witnesses except at your

17  sentencing hearing?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you understand that you would have had

20  the right to move to suppress, or keep away from the jury's

21  hearing and consideration, any evidence of any nature that had

22  been illegally or unlawfully obtained?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Do you understand that had you desired to

25  go to trial, that you would have the right to testify at trial?

1           THE DEFENDANT:  Yes.

2           THE COURT:  However, you understand that you could

3   not have been compelled or forced to testify at trial?

4           THE DEFENDANT:  Correct.

5           THE COURT:  Do you understand that you would have the

6   right to go to trial and remain silent, that is, not to take

7   the witness stand or call any witnesses or present any evidence

8   whatsoever on your own behalf?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that the Court would

11  have instructed the jury that they could not convict you

12  because you'd exercised your constitutional right to remain

13  silent, but could only base their decision on an offer of proof

14  from the government?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that you give up your

17  right to a unanimous verdict from a jury?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Ms. Leddy, do you believe that

20  Mr. Crosson understands the consequences of his guilty plea?

21          MS. LEDDY:  Yes, Your Honor.

22          THE COURT:  Thank you.

23          Mr. Crosson, I find that you understand the

24  constitutional and other legal rights you are giving up by

25  pleading guilty.

1                Now, sir, knowing all of those things, do you still

2    wish to plead guilty at this time?

3                THE DEFENDANT:  Yes.

4                THE COURT:  Sir, has any person forced you,

5    threatened you, coerced you, intimidated you, or talked you

6    into entering a guilty plea against your will?

7                THE DEFENDANT:  No.

8                THE COURT:  Are you acting voluntarily and of your

9    own free will in entering this guilty plea?

10               THE DEFENDANT:  Yes.

11               THE COURT:  Sir, are you pleading guilty because you

12   are guilty of the crime charged in Count 1 of the original

13   indictment?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Sir, has anyone promised you or told you

16   something that is different from what I have told you today to

17   get you to plead guilty?

18               THE DEFENDANT:  No.

19               THE COURT:  Is your plea the result of any promises

20   other than those promises specifically contained in your

21   written plea agreement?

22               THE DEFENDANT:  No.

23               THE COURT:  Are you pleading guilty to protect

24   anyone, sir?

25               THE DEFENDANT:  No.

1              THE COURT:  Has anyone promised or predicted the

2    exact sentence which will be imposed upon you in this case?

3              THE DEFENDANT:  No.

4              THE COURT:  Do you understand that at this time, no

5    one could know the exact sentence which would be imposed in

6    your case?

7              THE DEFENDANT:  Correct.

8              THE COURT:  Sir, have you been able to fully

9    understand what is going on in these proceedings today?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Based on your responses, sir, I find that

12   your guilty plea is voluntary.  Mr. Crosson, at this time, do

13   you have any questions or second thoughts about entering a plea

14   of guilty to this charge?

15             THE DEFENDANT:  I do not.

16             THE COURT:  Would you please stand for me.

17             How do you plead to Count 1 of the original

18   indictment charging you with influencing a federal official by

19   threat?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  Thank you.  Please be seated.

22             In the case of the United States versus Robert F.

23   Crosson, I find that Mr. Crosson is fully competent and capable

24   of entering into an informed plea.  I find that there is a

25   sufficient factual basis for his plea of guilty.  I find that

1   the defendant understands the nature of the charge and the

2   consequences of guilty plea to the charge.  I find that

3   Mr. Crosson understands the constitutional and other legal

4   rights he is giving up because of his plea.  And I find that

5   his plea is voluntary.

6          While I defer accepting the terms of the plea

7   agreement and adjudging the defendant guilty to the sentencing

8   court, I do accept the plea of guilty to Count 1 of the

9   original indictment.

10         Now, sir, the sentencing court must consider the

11  following factors when determining the sentence that you will

12  receive:  the nature and circumstances of the offense; your

13  history and characteristics; the necessity of punishing you,

14  deterring you, protecting the public from you, or providing you

15  with training, medical care, or other treatment; the kinds of

16  sentences and the sentencing range established by the

17  sentencing guidelines; the need to give defendants with similar

18  criminal records similar sentences; and the need to provide

19  restitution to any victims of the offense.

20         In order to help the sentencing court consider these

21  factors, the probation office is required to conduct a

22  presentence investigation of you and submit a report to the

23  sentencing court.  The information in this report might have an

24  impact on the sentence you ultimately receive.  I strongly

25  encourage you to discuss this process and your participation in

1   the same with Ms. Leddy.

2              Understand, sir, that you must not commit any crimes

3   between now and sentencing, because there are additional

4   punishments that may be imposed for committing additional

5   crimes.  Do you understand, sir?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Pursuant to Section 6A1 of the United

8   States Sentencing Guidelines, I order the probation office to

9   conduct a presentence investigation of Mr. Crosson, prepare a

10  draft presentence investigation report, and disclose its

11  contents to the government and Mr. Crosson.

12             I further direct that the probation officer and all

13  parties comply with Federal Rule of Criminal Procedure 32 and

14  US Sentencing Guideline Section 6A1.2 regarding deadlines for

15  disclosure, objection, departure motion, or sentencing

16  statement requirements.  The sentencing court will set this

17  matter for sentencing following receipt of the presentence

18  report.

19             Ms. Leddy, Mr. Moulton, if either anticipate a

20  lengthy sentencing hearing, please notify the sentencing court

21  in advance so that an adequate amount of time can be set aside

22  for that hearing.  And Judge Groh normally sets her sentencings

23  for approximately 45 minutes, so if you anticipate taking a

24  longer period of time, appropriate arrangements should be made

25  through her chambers in advance.

 1          MR. MOULTON:  Understood, Your Honor.

 2          MS. LEDDY:  Duly noted, Your Honor.

 3          THE COURT:  All right, counsel, anything further we

 4   need to address before we adjourn today?

 5          MR. MOULTON:  Nothing from the government, Your

 6   Honor.

 7          MS. LEDDY:  Nothing from the defense.

 8          THE COURT:  All right.  Mr. Crosson, before you leave

 9   the building today, I need you to report to the probation

10   office on the third floor of this building.

11          THE DEFENDANT:  Correct.

12          THE COURT:  They've requested that you appear up

13   there, so that will be the last thing that we need to take care

14   of before we adjourn.  So with that in mind, the defendant is

15   released pursuant to the order setting conditions of release

16   and we stand adjourned.  Thank you.

17          (Proceedings concluded at 2:51 p.m.)

18

19

20

21

22

23

24

25

1                          CERTIFICATE

2

3          I, Cindy L. Knecht, Registered Professional Reporter

4   and Official Reporter of the United States District Court for

5   the Northern District of West Virginia, do hereby certify that

6   the foregoing is a true and correct transcript to the best of

7   my ability of the taped proceedings had in the above-styled

8   action on October 23, 2023, as reported by me in stenotypy.

9          I certify that the transcript fees and format comply with

10  those prescribed by the Court and Judicial Conference of the

11  United States.

12          Given under my hand this 28th day of May 2024.

13                          /s/Cindy L. Knecht
                            _____
14                          Cindy L. Knecht, RMR/CRR
                            Official Reporter, United States
15                          District Court for the Northern
                            District of West Virginia
16                           - - -

17

18

19

20

21

22

23

24

25