<pre>
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF WEST VIRGINIA

 3   United States of America,

 4         Plaintiff,

 5             VS.                    CRIMINAL ACTION NO.

 6                                    3:23-cr-6

 7   Robert F. Crosson,

 8         Defendant.

 9                       - - -

10       Proceedings had in the initial appearance/bond revocation
     hearing of the above-styled action on January 31, 2024, before
11   Honorable Robert W. Trumble, Magistrate Judge, at Martinsburg,
     West Virginia.
12                       - - -

13       APPEARANCES:

14       On behalf of the United States of America:

15       DeMarr Moulton (via Zoom videoconference)
         Assistant United States Attorney
16       United States Attorney's Office
         700 Grant Street, Suite 4000
17       Pittsburgh, PA  14219
         412.894.7434
18


19       On behalf of the Defendant:

20       Kristen M. Leddy
         Assistant Federal Public Defender
21       Federal Public Defender's Office
         651 Foxcroft Avenue, Suite 202
22       Martinsburg, WV  25401
         304.260.9421
23


24       The defendant was present in person.

25       Proceedings recorded utilizing tape.
         Transcript produced by computer-aided transcription.
</pre>

Cindy L. Knecht, RMR/CRR/CBC/CCP
PO Box 326  Wheeling, WV  26003  304.234.3968

```
 1                      Wednesday Afternoon Session,
 2                      January 31, 2024, 1:00 p.m.
 3                             - - -
 4          THE CLERK:  This is the case of the United States of
 5   America versus Robert Crosson, Criminal Number 3:23-CR-6,
 6   defendant one.
 7          Will the parties please note their appearance for the
 8   record.
 9          MR. MOULTON:  Good afternoon, Your Honor.  DeMarr
10   Moulton for the government.
11          MS. LEDDY:  Kristen Leddy, Assistant Federal Public
12   Defender, for Mr. Crosson.
13          THE COURT:  All right.  Good afternoon.  We're
14   scheduled for an initial appearance and then a bond revocation
15   hearing in this matter for today.  And as an initial procedural
16   matter that we need to take care of, the United States Attorney
17   is not present in the courtroom with the defendant.
18          Does the defendant have any objection to allowing the
19   United States Attorney to appear by video in this matter?
20          MS. LEDDY:  No objection, Your Honor.
21          THE COURT:  All right.  Thank you.
22          Let's get started with the initial appearance first.
23          Mr. Crosson, do you understand English, sir?
24          THE DEFENDANT:  Yes.
25          THE COURT:  My name is Robert Trumble.  I am a United
```

1    States Magistrate Judge.  I'd like you to stand and be sworn by

2    the clerk, please.

3              (Defendant sworn.)

4              THE COURT:  All right.  You are a citizen of the

5    United States?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Sir, all persons are brought before a

8    judge as soon as possible after their arrest.  This is an

9    initial appearance.  At this stage, it's not a determination of

10   guilt or innocence, but the purpose for initial appearance is

11   to let you know the violations against you, to let you know you

12   have a right to an attorney, and determine whether you'll be

13   released or detained pending your bond revocation hearing or

14   whether we -- pending your bond revocation hearing.

15             You are charged with violating the terms and

16   conditions of your pretrial release by the following:

17   Specifically, condition 7(n), that you should not use or

18   unlawfully possess a narcotic drug or other controlled

19   substance.  Specifically, it says that on January 2, 2024, your

20   pretrial services officer received information that you had

21   tested positive for cocaine on December 27, 2023.  On

22   January 8, 2024, your pretrial services officer received a

23   urinalysis from your supervising pretrial officer in the

24   Eastern District of New York reflecting a positive result for

25   cocaine on December 27, 2023.

1              Now, there had been a prior instance back in
2    September that's also mentioned in this petition that your
3    pretrial services officer had received from the supervising
4    officer, that on September 27, 2023, you had provided a
5    drug-testing sample which returned positive cocaine, and that
6    you'd made a verbal admission to using cocaine on September 19.
7              So those -- that is the charge as set forth in this
8    particular petition.  Should the Court find that you are guilty
9    of those violations, the potential penalties are revocation of
10   your release, an order of detention, and prosecution for
11   contempt of court.
12             I've provided for you in written form your
13   constitutional rights.  It should be on the table in front of
14   you.  I'm going to read them to you, and I'll ask that you
15   follow along.
16             You have a constitutional right to remain silent.  If
17   you give up your right to remain silent, anything you say can
18   and will be used against you in this or any other court of law.
19   Even if you may have given a statement to the police or others,
20   you have a constitutional right to make no further statement to
21   the authorities.  If you start to make a statement, you have a
22   constitutional right to stop in mid-word or -sentence and say
23   no more.
24             You have a right to counsel to assist you in this
25   matter.  If you can not afford an attorney, you may qualify to

1   have an attorney appointed to represent you.  And whether
2   appointed or retained, you have the right to the assistance of
3   counsel at every stage of the proceedings against you and
4   during any questioning by the authorities.
5            Sir, do you understand your constitutional rights as
6   I've read them to you?
7            THE DEFENDANT:  Yes.
8            THE COURT:  You have a right to -- you have counsel
9   present for you, so we do not have -- and you have a right to
10  have your attorney present for your bond revocation hearing,
11  and I note that Ms. Leddy is in the courtroom and we've
12  scheduled these so that you're coming from the Eastern District
13  of New York, so we wanted to try to schedule your initial and
14  your bond revocation hearing at the same time.  Ms. Leddy was
15  notified and was present.  But you do not have a right to a
16  preliminary hearing in this matter, so we'll move then to --
17  that concludes the initial appearance.
18           We'll move to the bond revocation hearing, and as we
19  do, I note that I have a waiver as to the violations.  And then
20  this is a two-step process where we actually have to determine
21  whether there's been a crime that's been committed which is a
22  violation or whether there's clear and convincing evidence the
23  defendant has violated a condition of release.
24           In this case, I have a waiver as to this first
25  provision, so Ms. Leddy, let me ask you, have you talked with

1  the defendant about the purpose for -- or the procedure for
2  which a revocation proceeding is conducted?
3            MS. LEDDY:  Yes, Your Honor.
4            THE COURT:  And he understands that this merely
5  waives any contest as to whether or not a violation has
6  occurred?
7            MS. LEDDY:  That's correct, Your Honor.
8            THE COURT:  And he's reserving his right to contest
9  whether or not his bond should be revoked; is that correct?
10           MS. LEDDY:  Yes, Your Honor.
11           THE COURT:  All right.
12           Mr. Crosson, you understand that this -- that I have
13 a waiver in my hand as to the violation portion of this
14 hearing, and you have discussed that with Ms. Leddy?
15           THE DEFENDANT:  Yes.
16           THE COURT:  And you understand that by signing this
17 waiver, you are conceding that a violation of your pretrial
18 release has in fact occurred; is that correct?
19           THE DEFENDANT:  Yes.
20           THE COURT:  And you've agreed to it by signing the
21 waiver; is that correct?
22           THE DEFENDANT:  Yes.
23           THE COURT:  I find that the waiver has been properly
24 executed and direct that it be filed.
25           Now we turn to the issue of whether or not bond

1   should be revoked, and the standard there is whether there are
2   a condition or a combination of conditions of release that will
3   assure the defendant will not flee or pose a danger to the
4   safety of any other person or the community or, quite frankly,
5   whether there are any conditions that the defendant will abide
6   by or a combination of conditions that the defendant will abide
7   by.
8            So are the parties prepared to proceed as to that
9   segment of the hearing?
10           MS. LEDDY:  Yes, Your Honor.
11           THE COURT:  All right.  Mr. Moulton, what say you,
12  sir?
13           MR. MOULTON:  Your Honor --
14           THE COURT:  You're going -- Mr. Moulton, you're
15  either going to have to speak into the microphone -- we're
16  getting about every other statement that's coming out of your
17  mouth, so climb a little closer there and make sure you talk
18  directly into your microphone.
19           MR. MOULTON:  Can you hear me?
20           THE COURT:  That's much better.  Thank you.
21           MR. MOULTON:  Your Honor, we're not asking for him to
22  be detained.  The government would concur with what I believe
23  probation's recommendation is.  There are some conditions that
24  can give Mr. Crosson to be abiding by in lieu of jail time and
25  I'll let probation discuss that, but more testing, more

1 programming, treatment, or something like that.

2     THE COURT: Okay. Well, all right. Thank you.

3     Well, you know, that becomes a little bit of a
4 problem. It sounds like the government is not seeking to
5 revoke bond in this case and -- but it's not really the
6 government's option to do that. It's really my option. It's
7 my bond, and it's my issue that I have in terms of whether or
8 not Mr. Crosson's capable of following any of the conditions
9 that I've set.

10     The track record is not good so far. And as a matter
11 of fact, here's the issue that we have in this case.
12 Procedurally, Mr. Crosson pled to a charge which, when he went
13 to sentencing, Judge Groh rejected that and ordered us to come
14 back, and now he's pled to two additional charges.

15     Now, after the first plea, he consumed cocaine and
16 was violated at that time in terms of a report being filed, and
17 now we have a second instance where the same exact thing has
18 occurred and, again, it's after he has pled guilty to these
19 charges.

20     So I'm a little bit befuddled as to exactly what
21 condition that I can set that will get Mr. Crosson to start
22 abiding by the order set forth in my conditions as set forth in
23 my order. This is becoming a pattern for which it's an
24 unacceptable type of behavior.

25     Ms. Leddy, how do you respond to that?

1               MS. LEDDY:  So, Your Honor, following the second
2    positive for cocaine, which Mr. Crosson admitted to his
3    probation officer in New York, he was referred to Counsel
4    Services of Eastern District of New York specifically for the
5    purpose of drug treatment, substance abuse treatment.  He has
6    been assessed through that program and he is to begin therapy
7    through them upon his return to New York.
8               This is a new treatment that he has not undergone in
9    the past, and I believe it could alleviate the Court's concerns
10   with regard to his -- any future drug use.
11              We concur with the probation officer's statement that
12   this is a condition that would allow him, if the Court were
13   willing to modify it, the terms of his bond, to come into
14   compliance with this Court's requirements for his terms and
15   conditions.  Thank you.
16              THE COURT:  Where is this program?  What is the name
17   of the program?
18              MS. LEDDY:  The name of the program, Your Honor, is
19   called Counsel Services of the Eastern District of New York.
20   And it's been arranged through his probation office, the local
21   supervising probation officer in New York.
22              THE COURT:  All right.  Mr. DeHaven, you're the local
23   supervising officer for this defendant; is that correct?
24              THE PROBATION OFFICER:  Yes, Your Honor.
25              THE COURT:  And you've been in contact with the

1  supervising officer in the Eastern District of New York?

2             THE PROBATION OFFICER:  Yes, Your Honor.

3             THE COURT:  Is this an inpatient program, or is this

4  a -- just a counseling program of some type?

5             THE PROBATION OFFICER:  I believe it's an outpatient

6  counseling program, Your Honor, that's contracted through their

7  office.

8             THE COURT:  And the supervising officer in New York

9  is on board with this as an additional condition?

10            THE PROBATION OFFICER:  Yes, Your Honor.

11            THE COURT:  Is it really an additional condition, or

12 is it already in there that he is to participate in treatment

13 as prescribed by his pretrial services officer?

14            THE PROBATION OFFICER:  I don't think the Court would

15 have to modify the conditions to allow Mr. Crosson's attendance

16 to be under the umbrella of the conditions unless --

17            THE COURT:  Yeah.  It looks like condition 7(o) says

18 participate in a program of inpatient or outpatient substance

19 abuse therapy.  Is that what this is?

20            THE PROBATION OFFICER:  Yes, Judge.

21            THE COURT:  So there really doesn't need to to be a

22 modification.  He just needs to attend this as required; is

23 that right?

24            THE PROBATION OFFICER:  Correct, Your Honor.

25            THE COURT:  So if he doesn't do it, that would be

1  another violation, wouldn't it?

2              THE PROBATION OFFICER:  Yes, Judge.

3              THE COURT:  All right.  Thank you.

4              THE PROBATION OFFICER:  Yes, Your Honor.

5              THE COURT:  Well, see, again, that presents another
6  dilemma that we have here, because it's already been a
7  condition, although he hasn't been directed to.  That's kind of
8  one of those things that if a defendant has a particular issue
9  or feels they have an issue, they ought to take it upon
10 themselves, incumbent upon themselves, to seek that type of
11 treatment or ask for that type of treatment.  Mr. Crosson
12 hasn't taken upon himself to do so thus far, so now it has to
13 be imposed by your pretrial services officer with the thought
14 that maybe this time he will abide by the conditions of
15 release.

16             So Mr. Crosson, if I don't take away your freedom now
17 and incarcerate you and revoke your bond, do you think that you
18 can comply with the terms and conditions of my order this time?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  You understand that there is a couple of
21 expressions that I can use, how many bites of the apple do you
22 have, fool me once, shame on me, fool me twice, shame on you,
23 or the same -- I think it's fool me once, shame on you, fool me
24 twice, shame on me.  You know.  I think we're getting into the
25 second and third, and I don't know what the third variation of

1  that is, but the idea being is that we keep coming back with
2  the same thing, and every time you say, yeah, I'll comply with
3  it, and then all of a sudden I get another report and say you
4  don't.  So you know what my option is if there is a next time,
5  don't you, sir?
6              THE DEFENDANT:  Yes.
7              THE COURT:  Yeah.  So I suggest that you follow the
8  terms and conditions of my order setting conditions of release
9  to the letter of the law, or otherwise there won't be another
10 opportunity to come back and take a bite of the apple or to
11 fool me or not follow the conditions of my order.
12             So with that in mind, the Court will find that there
13 are conditions that can be set that will assure that the
14 danger -- the defendant will not flee or pose a danger to the
15 community and that he's likely to abide by the conditions as
16 previously set forth in the order setting conditions of release
17 which require him to attend an outpatient treatment service as
18 prescribed by his supervising officer in the Eastern District
19 of New York.
20             The Court will note that if there's any further
21 violations of the petition, we will conduct a bond revocation
22 hearing, but it will be a very short hearing as much as the
23 Court's tolerance for this type of behavior has worn very thin
24 at this point.
25             So with that in mind, the defendant will be released

1   pursuant to the order setting conditions of release,
2   emphasizing that he is to attend his outpatient treatment as
3   prescribed by his pretrial services officer, and any future
4   violations will be reported to the Court promptly.
5           MS. LEDDY:  Thank you, Your Honor.
6           THE COURT:  As a housekeeping matter I do have a
7   videoconferencing waiver.  I put that on the record that you
8   waived counsel -- the United States government's attorney
9   appearance by video conferencing waiver, but this is a waiver
10  that you've signed?
11          MS. LEDDY:  That's correct, Your Honor.
12          THE COURT:  All right.  And we've already discussed
13  that, so we'll go ahead and have the order -- the
14  videoconferencing waiver filed.
15          All right.  Anything further we need to address
16  before we adjourn this afternoon?
17          MR. MOULTON:  Not from the government, Your Honor.
18          MS. LEDDY:  Nothing from the defense, Your Honor.
19          THE COURT:  All right.  With that in mind, the
20  defendant is released pursuant to the order setting conditions
21  of release as addressed by the Court and we stand adjourned.
22  Thank you.
23          (Proceedings concluded at 1:25 p.m.)
24
25

1          CERTIFICATE

2

3          I, Cindy L. Knecht, Registered Professional Reporter

4  and Official Reporter of the United States District Court for

5  the Northern District of West Virginia, do hereby certify that

6  the foregoing is a true and correct transcript to the best of

7  my ability of the taped proceedings had in the above-styled

8  action on January 31, 2024, as reported by me in stenotypy.

9          I certify that the transcript fees and format comply with

10 those prescribed by the Court and Judicial Conference of the

11 United States.

12         Given under my hand this 28th day of May 2024.

13                         /s/Cindy L. Knecht
                           _____
14                         Cindy L. Knecht, RMR/CRR
                           Official Reporter, United States
15                         District Court for the Northern
                           District of West Virginia
16                          - - -

17

18

19

20

21

22

23

24

25